Good morning, Your Honors. Dennis Riordan for Petitioner Bishop in this 2254 habeas corpus proceeding. Given the requirement of AEDPA that in order to gain relief on a Federal habeas petition, the petitioner must demonstrate either that the State court unreasonably applied Federal constitutional principles or acted contrary to clearly established Federal constitutional principles. as interpreted by the Supreme Court. Certainly in my experience, relief is granted only in those cases where a Federal court is left with the firm conviction that something has gone fundamentally wrong in the State proceeding. And let me begin perhaps at the back end of that equation then. Something did go terribly wrong here and the State court acknowledged it. Gayle Bishop, a fairly controversial elected public official given her anti-development stance in Contra Costa County, was prosecuted by a political opponent after that political opponent, Gary Yancey, admitted that both he and his entire office was disqualified ethically from this prosecution. The State court found the means by which District Attorney Yancey and his deputy, James Sepulveda, continued to prosecute the case to verdict after disqualifying their entire office to be a charade that raised serious questions about the fairness of these proceedings. The State court, however, felt that it could not reach that unfairness because a motion to disqualify Sepulveda and the office had not been made prior to verdict. And we submit that it is the very failure to make that motion to disqualify that enables this court to not only grant, but that it must grant relief, because it is that failure which satisfies the State court. And that's the reason why we're going to get into a little bit more detail about the adverse effect test of the conflict of interest standard. Kagan, just to be clear, you have not brought a separate Strickland claim as to that failure? Not in this Federal Habeas Corpus proceeding, Your Honor. And what is the state of the record on this? I mean, in fact, we have no idea whether this had anything to do with why the conflict that we're going to get into now had anything to do with why this wasn't reached. Right. And under Kyler, what we know is this, and the State court said this, defense counsel said they were going to bring this motion to disqualify. That's in the record. It's a factual finding by the State court. We know after saying they would do it, they did not. Is it reasonable, is it a step that competent counsel would normally take to disqualify a prosecutor who has omitted his bias? Certainly it is reasonable. The difference between the State court and our position here is that the State court used the Strickland standard. It said, okay, certainly they could have moved to disqualify him. It was a charade. It's – frankly, it deeply disturbs us. But you haven't proven that prejudice. You have not proved that the failure – Yes, but it's not the prejudice. You haven't proven the effect. You haven't proven that the reason they didn't do it was for that reason. But under this Court's authority, Your Honor, how does one prove that if you have – You have an evidentiary hearing and you ask them. You have an evidentiary hearing and you ask them. Is the reason why you – why didn't you do this? Is the reason why you didn't do this because you had this conflict? Your Honor, I would – They would do it without having to prove prejudice from their not having done it. In other words, what you miss – what you don't have to do if it's Kyler rather than Strickland is demonstrate that who the lawyer was, for example, had anything to do with how the trial came out. That's irrelevant if you can prove that the reason why they did this was because of their conflict. But isn't there a huge evidentiary gap here at this point? No, Your Honor. I submit, Your Honor, that if you look at this Court's authority and virtually any authority, there has never been an evidentiary hearing in that question. Look at Lockhart. Look at Ms. Kinnis. In each of those cases, look at Sanders v. Rattell. But isn't this – we just did a remand in a similar case for a purpose that seems very much like that. Earp versus Arnosky. Is that the right one?  I'm not sure of that, Your Honor. It was a recent case, and that may be it, in which there was a remand essentially for evidentiary hearing on a question like that. But in these cases, Your Honor, Sanders, Ms. Kinnis, Lockhart, what the Court said was, is it likely? Is it a likely result? And how do you figure out whether it's likely? You look at whether competent counsel ordinarily very well might not have done – may have done something like this. I have never seen a conflict case, Your Honor, which was resolved on the basis that counsel came in and said, oh, by the way, the reason I didn't cross-examine was because I suffered from a conflict. Lockhart was pre-Mickens, right? Lockhart was pre-Mickens, before Mickens. I believe that's true, Your Honor. And I'm just wondering whether or not after Mickens this likely standard survives or whether all the emphasis in Mickens about proving an actual effect means you have to prove an actual effect, not a likely effect or a possible effect. Not prejudice, but that something happened as a result. Your Honor, Mickens – actually, that was not the holding in Mickens. Mickens was a case in which they essentially said that you have to prove an adverse effect. But in Lockhart, in Miss Guinness, what they looked at was the fact that counsel had not done something that counsel would ordinarily do. I don't know that there is any – the problem with examining counsel with a conflict about why they do things is that's why we have conflict-free counsel, because it's virtually impossible, then, to know what their motivations were in a given situation such as this. We've got a disqualified prosecutor bringing charges that indisputably are marginal. The prosecutor's closing argument is if there's as much as a dollar misspent on each of these five felony counts, this defendant is guilty of five felonies. There is no public official in the State of California that does not commit a felony every day under that standard. The reason we demand conflict-free counsel, especially in political cases, is to ensure that marginal cases are not being brought for political motivation rather than because of a dispassionate consideration of the merits of the case. The case I had in mind is Alberti v. McDaniel v. Orkus, 9th, 2006, and – which did remand because the reason why something was done was not necessarily attributable to a conflict. A link between deficient performance and the conflict of interest must be shown. And then they remanded for an evidentiary hearing. What is the state of the evidentiary hearing in this case? I mean, what is the State – would that be a viable alternative here, or are we sort of beyond that at this juncture? Well, the difficulty, you know, that we would have is that it isn't whether there was a tactical purpose. I mean, in an incompetency case, you say, did Townsville have a tactical reason to do or not do something? If there's a reason to do it. I just want to know if they did it, that's all. Did – is this why you did it? In this particular instance in which you're suggesting that there was essentially a deal cut, that shouldn't be that difficult. It's not sort of internal processes. It's, you know, did you cut a deal? No, Your Honor. In a conflict – if an attorney has a conflict and in this situation is being told that we may kick you off the case and you have a right to kick us off the case and nobody makes this motion, how do you sort through that? An evidentiary hearing in which counsel says was there a tactical reason to do this? Very often there's two good alternatives open to any counsel. The reason that we demand conflict-free counsel is being free of a conflict is the only way we can be sure that the conflict doesn't operate here. These are lawyers who were told by this judge, you are not to talk to your client about this. You are to protect the interest of a major prosecution witness. The Court created a conflict by that order. But one problem is, of course, that's not what the Court said. It said to one lawyer that you're not to talk to your client about this, not to both  attorneys. Well, he said to one attorney that you are not to talk to your other attorney about how to prepare this witness. They couldn't talk to one another. And when he lifted the order, he said, I'm going to assume that you're going to continue to act just the way you've been acting before this order has been imposed. So, in effect, the order was never lifted at all. And we are – so how do we sort through that? I mean, I think in the case of the McKinnis case, I submit to Your Honor that if you have a factual finding that a lawyer is going to do something, and by the State Court, they've announced their intention, and they don't do it, and they suffer from a conflict, and that conflict is certainly related to the other counsel's conflict because both of them have raised these conflicting or warring conflict claims. But in this instance, there was a very good reason not to do it, wasn't there? In this instance, there was a very good reason not to do it. Not to do? Not to challenge the person because if they challenged him, they didn't have him as a witness. Well, that arguably – well, actually, Your Honor, that isn't true because they had the worst of all situations. He's functioned as a witness in this case. He gets up in closing argument and talks about his personal experience. He should have been disqualified for that reason alone. Who – I mean, what competent counsel allows a district attorney to get up and give a closing argument about events that the district attorney was part of? It's worse. If he was a witness, they would have gotten a chance to cross-examine him. Instead, he gets up to give his version of events in closing argument, not subject to cross-examination. I've noticed that there have been several Contra Costa County cases like this. I sometimes wonder if there's only one lawyer in Contra Costa County because everybody seems to show up with all these weird interactions. But anyway, go ahead. But, again, the problem with conflicted counsel is that it's impossible to sort through their motivations because they've got a conflict. Right. So here's another legal question. Where are we at this point after Mickens with regard to whether there is clearly established law that kind of applies at all to successive conflicts or – you're also arguing, as I understand it, that the order itself created a conflict. Yeah. I am not – this case, we are not making our argument to this Court on the successive conflict basis. Imagine if a completely unconflicted counsel gets up to examine a witness who's – who he doesn't have successive representation with. The examination starts to get close to areas where the witness might incriminate himself, and the judge says, counsel, I am imposing upon you the duty as an attorney to respect, you know, Witness A's Fifth Amendment rights. So conduct your cross-examination aggressively, but you have an ethical duty to protect him so he doesn't incriminate himself. Does that order create the most blatant conflict imaginable? Absolutely. All right. So let's assume so. It's not exactly parallel here because this was not a trial. It was before a trial, and it was one lawyer, not two. But leaving all that aside, Mickens has this section at the end which says, this is just to tell you that we haven't really held anything about Kyler outside of the direct representation of two conflicting defendants. Right. And the Second Circuit says if this case, Bishop case, and in Tueros, which we cite in our brief, both of those cases were tried before Mickens under – under Kyler. The notion that the dicta in Mickens could say anything that changes Kyler is – is unsustainable. But when our case law seems to, again, be heading in the opposite direction, does it not? There is no case, Your Honor, there is no case that would suggest that you don't have a conflict if you have divided loyalties. Let's say these counsel had not represented Ms. Arcedo before. Let's say they hadn't, but the court, for whatever reason, had the sense that she had these matters, these very embarrassing matters. And he said to counsel, look, you – I want you to protect the witness's interest in confidentiality as much as your client's. That's a conflict created that has nothing to do with prior representation. This court issued an order to a law firm saying divide your loyalties. Okay. You're a law firm. It's Burek and Burek. You both have the same ethical obligations because you're partners. As to Ms. Arcedo, who is a former client of Mr. Burek, honor those obligations and represent your client. But that – you see, that isn't exactly what he said. As I understand it, the order went beyond the ethical obligations, because the ethical – and may well have created a conflict for the person as to whom it was issued, who was Burek. Because it did – and it did go beyond the ethical obligations because it required that he not say anything about having anything to do with his representation of Ms. what's – I don't know. Arcedo. Arcedo. Presumably including things that were of public record and not confidential at all. Exactly. So – but that order, the one that went beyond the public – the ethical obligation didn't apply to the partner. But in a law firm, the ethical obligations have the same – Yes, it was an ethical obligation. That's what I'm saying. But the – he was issuing an order that went beyond the ethical obligations. Right. And he was issuing it only as to one of them. Right. So is there only one of them who had an obligation – who had a conflict due to the order as opposed to due to whatever the ethical obligations were? And to not assist his law partner in any way to find out the things that he might find out that would be helpful to their respective client. You know, just another aspect of this, of course, that the Court has to confront is that to the extent that we move away from the conflict analysis and say this didn't create a conflict, we have for the first time apparently in the history of United States criminal jurisprudence a gag order that not only lasts overnight, that lasts for months when the United States Supreme Court has approved a gag order in one context and one context only, a break in the cross-examination of the defendant. The government is asking this Court to say that there are no constitutional implications on the Sixth Amendment right to counsel if a court imposes a gag order on a defense attorney not to talk to their client when the Supreme Court certainly has said the opposite and no court has said this. The government says, oh, no, if the order is some reasonable, if there's a reason for it, then, you know, there's no problem with imposing gag orders on clients. And I would submit that no court – no Federal court in the United States can take that position. Well, clearly if there were one lawyer, this would be a major problem. There were two lawyers. What difference does that make? If they are of the same law firm and the gag order is on your – I don't understand that. The gag order didn't run to both of them. It only ran to one of them. But any lawyer in the State of California certainly and in the nation knows that if your – if your law firm has a conflict, the entire – The complaint is that the – but the order ran beyond the conflict. If it didn't run beyond the conflict, then it was a perfectly good order. The problem with it was that it ran beyond the conflict. Well, no, no. If it just ran to the – The order of the conflict. It wasn't a good order if it ran just to the conflict, Your Honor. That's the problem with conflicts. You can't solve them. If you protect Ms. Arcedo – I'm not saying it's – it was – I'm saying that that's a different issue. But you're trying to say that it's the order that created the conflict, not the conflict. Right? So if it's the order that created the conflict, it's because it went beyond the conflict, which it did. It did go beyond the conflict. Right. But it only ran to one of the lawyers. But the order that was imposed was saying, look, your – a member of your law firm has a duty, and I impose on that member of the law firm a duty to respect that. He has to respect it by not assisting his co-counsel in the conducting of this criminal trial that they're conducting together. I submit, Your Honor, that having done that, that you have placed the law firm under an ethical obligation to treat the confidences of the – well, look at the prophylactic effect. I mean, in this situation, after this order, if Burak had done what he didn't do, which is attack the credibility of the witness on the basis of this prior criminal prosecution, would he fear that he's then subject to even civil suit on the grounds that he's violated the – Prior criminal prosecution? I thought there were some civil contempt orders. I stand corrected. It was civil – there was an underlying criminal charge of a kidnapping involved in a divorce case, Your Honor. And there was a civil contempt order, which was dropped, and presumably would never have made proper – And documents indicating that there had been false statements made to the Court within that – within that context. But ultimately, Your Honor, if you uphold the order, if you say that it's a constitutionally acceptable order, I just don't think you can do that. So the question is, let's say it is unacceptable constitutionally, but the Court is raising a multitude of questions about how the prejudice might have affected the case. Then we're dealing with the fact, and Perry v. Leek says it, Getter says it, if the order is – if the gag order is unconstitutional, that is the end of the matter. It is reversible per se. Why? Because – and the Second Circuit in the – I believe – no, it was not Tueros. It cited in our brief made the point there there was an overnight order. Maybe it was rescinded before the weekend. And the Court said, Look, we can't get into this kind of speculation about what difference it might have made. You cannot issue gag orders on counsel other than in the context of the proven Perry v. Leek. If you do, that's the end of the matter. I mean, how do we sort through that? I mean, how can you ever sort through that? I've got 20 seconds left. Let me try. Let me try and preserve it. Good morning. May it please the Court. It's interesting that this restitution – that the recusal issue keeps coming up, because counsel specifically informed the trial – the appellate court that he was not raising this issue in his new trial motion on appeal or on habeas in the State courts. And he was – He never directly raised it. He's raising it now, as I understand it, as sort of – as evidence of what may have been an actual effect of the – of the – either the conflict or the – the direct conflict or the order conflict. Well, I think my point is, Your Honor, that appellant was represented in a new trial motion. A number of issues were raised, including the conflict issue. Counsel had an opportunity at that time to raise the Strickland issue or this factual question and did not do so. The appellate court also found – I think it was the concurring judge found that, in fact, the trial attorneys were cooperative with appellate counsel and there's no indication otherwise. With regard to the Burr Act being burdened by the gag order, it's interesting that this issue changed in the appellate court as well. Initially, the issue was raised as Burr was not given an opportunity or didn't have an opportunity to discuss this matter with co-counsel. After oral argument, I understand, in the court of appeal on a subsequent habeas, the issue turned into Burr was misled by Burr about the nature of the contempt proceedings. And I think that this is clearly laid out in the record in the – in the concurring opinion, that's at ER 107, 108. But clearly, the trial court in the new trial motion and the appellate court found that Burr not only had the opportunity to investigate this stuff about the family matters, the contempt, he did so, and, in fact, that these matters were public record. And, of course – How do we know that Burr Act did investigate? Excuse me, Your Honor? Where in the record do we know that Burr Act did investigate? Well, I believe if SR – SCR2, in our excerpts, if this is the new trial motion, the court is addressing this issue and discusses the – that this – this evidence was investigated as – by Burr Act. And in Burr's declaration in support of a supplemental habeas corpus, Burr – I think Burr declares that he discussed this matter with Burr and there was some misunderstanding about whether – what actually happened with the civil contempt proceedings. And that's also discussed in the concurring opinion. Well, there were criminal contempt proceedings. Excuse me, Your Honor? There were criminal contempt proceedings. Well, there were – but they were dropped, Your Honor, and there was – the State Court specifically found that this was not evidence that would have been admissible to impeach anyway. Well, this may be because it was too old and a lot of other factors that might not have been admissible, but – But it was because it wasn't criminal, Your Honor. That's discussed in detail in both the lead opinion, the majority opinion, and the concurring opinion. It's because these were civil matters that they weren't admissible, in part. Well, they were over 10 years old in the release. Yes, Your Honor. And counsel, in any event, Burr certainly had an opportunity to investigate this, and well before trial, the gag order was rescinded. But did he investigate other things? In a case like this, the natural thing would be to put an investigator on this very important witness and find out everything that he could. I believe that he did, Your Honor. And where do we find that? Well, the principal impeachment was that Ms. Arceto was actually fired from this – Well, I understand that, but that was very clear. But is there anything in the record that tells us what kind of an investigation was undertaken? As to other – I don't know, Your Honor. Okay. Counsel suggests that – appellate counsel suggests that he uncovered some impeaching evidence. But again, there was no – this was never developed. No strickling claim was made at any time in the new trial motion or at any time thereafter. The gag order was imposed to basically preserve the status quo because Arceto hired an attorney who came in and said that he was going to file a motion to recuse Burr. And so to preserve this – the witness's rights, the court entered into this gag order, which was then rescinded after – Counsel disputes that. He says it wasn't actually rescinded because the judge said, well, I'm rescinding the order, but you should do the same thing. Well, but that's not – I think Your Honor pointed out there's a difference between a judge saying I'm – don't talk to your counsel about this issue to be ethical. And I think – I understand. But he – as I understand the representation that was made before is he said one, not two. He said the former, not the latter. Is that so? He didn't say just be ethical. He said something – he said do the same thing I told you to do. You know, I have the quote here somewhere, Your Honor, and I don't think that that's the case. It was discussed in the court of appeal opinion. The court's – this is the court of appeals comments. The court's remarks to the fact that Burr would operate under the same guidelines would have applied if the order had never been imposed and did not serve as a cloud over Burr's participation in the trial, but simply voiced the ethical obligation imposed upon the attorneys to respect the confidentiality. Well, that's sort of the obverse. Excuse me. That's kind of the obverse. Are you going to address the question of the reliance on the advice given to her by the prosecutor, a trapment by estoppel issue? Well, yes, Your Honor, I have that. There were some other claims I was going to get to. But basically, the problem with counsel's argument is that, first of all, the appellant misled the district attorney. She hid the evidence that she was using. Well, that's an element of the entrapment by estoppel, but the question is why wasn't the instruction given? The jury could have decided what they thought about that. Well, because estoppel didn't apply. And estoppel also didn't apply because – But that's deciding the defense. I mean, if somebody raises a defense and says, yes, I did tell him everything, then you have to have a jury determination of whether you told him everything. Well, Your Honor, there has to be substantial evidence to apply to estoppel. All right. Well, there was a letter. There was her testimony as to what Sepulveda had told her. There was her testimony as to what she had told him. On her story, couldn't she have succeeded if she believed her story? Well, no. Because the letter – well, the letter from the district attorney just said there was no evidence that appellant's staff has assisted in her law practice because appellant covered up that evidence. And also some assistance might have been provided on personal time. That letter did not, as the court of appeals – All right. But she testified beyond that, that he told her specific things, the most direct one being that reimbursement did matter. And then he stood up and took this firm position at trial that reimbursement did not matter. And the court eventually concluded that he was right. Reimbursement didn't matter. But still, he – she had a testimony about what she was told, which was to the contrary. Well, but the court of appeals found, as a matter of fact, that there was no evidence that she made substantial reimbursement. And again, they said the absence of quantified reimbursement in the present case demonstrates it's not what happened here. And that was – that was – it's at ER-59. The court of appeals – But there was evidence that she said that she hadn't put in for a certain cost that she – mileage and various things, and set that off against the use that she made of the fax machine and so forth. So there was evidence. Well, Your Honor, there was not substantial evidence. The court of appeal found that as to counts 3, 5, and 7, there was no claim of reimbursement at all. And that her comments that – Oh, that's fine. So she would have lost that, or it could have not gone to that. But as to some of the counts – She made general allegations of I didn't claim money for mileage, but in the court of appeal found that was not substantial evidence of reimbursement. And, of course, in any event, reimbursement is not a defense in this case. Appellant seems to concede that. So basically what we have here – and the instruction request was based, I believe, on the – on the letter that was sent to the complaining citizen, which was then cc'd or a copy was given to appellant. But, again, that letter specifically stated that I found no evidence that appellant is misusing state funds or requiring her staff to work for personal, private reasons. Maybe it's just my confusion. The prosecutor who summed up, right, was one to whom this conversation presumably occurred? I mean, how do you – Your Honor. I realize I'm looking at the brief that the appellant does not even raise as an issue. Maybe as an outsider, how could it be that they allowed him to try this case? Was that you? I don't know. No. No, Your Honor, it was not. I think this was basically an agreement by all the parties. The court of appeal rejected this issue, which has not been raised on habeas. I understand. But I just – as an outsider, I just have a lot of trouble understanding how you could agree to that, how any court would accept it. Your Honor, I cannot answer that question. Okay. Except that, Your Honor, as the trial court found in denying the new trial motion and the court of appeal found, appellant knew about this and went into this with her eyes open and she had tactical reasons for not wanting this district attorney as a witness. And it is true that the court of appeal said that this recusal appears to be a charade however, the court of appeal also found that the issue was not – couldn't be raised because it would allow the appellant to play fast and loose with the system. Well, why should – to go back to the counsel question and the effect of all this, why shouldn't there be an evidentiary hearing on the question of whether, in fact, the reason why this issue wasn't raised was because of the order and or the conflict of counsel? Not prejudice, but just why didn't you do it? No one's ever asked that question, have they? Well, I think that – Have anybody ever asked the lawyers why they didn't? Well, first – I have two answers to that, Your Honor. First of all, counsel, appellate counsel had an ample opportunity to pursue this issue and chose not to. No, not directly. I'm talking about through the window of the conflict gag order question, i.e., what was the effect of the – he's suggesting that the actual effect of the conflict created by the gag order was not to challenge the prosecutor. And the question is, why shouldn't we find out whether that's true or not? Well, there's a number of reasons. First of all, it's entirely speculative, Your Honor. I know. That's why I'm asking why we shouldn't find out. Well, because it was never – they had an opportunity to address this, to raise this, and it was not raised. The implication of what you're saying is he agreed in the order that he doesn't lose a fee and lose the client and he won't go after him. I mean, is that what we're talking about? Well, that's the suggestion. That's what's thrown out there, but never – they never made any attempt to prove that. And the gag order was removed. Are you suggesting a waiver? In other words, the problem is they haven't asked for an evidentiary hearing. Is that the problem? Your Honor, this is an issue. I think that, frankly, it's a red herring. I think that, frankly, the reason we didn't have an evidentiary hearing and there were no declarations on this issue, because there were declarations from counsel on other issues, trial counsel, is that they don't really want to present it that way. They want to be able to argue it. And I think looking at this situation realistically – Well, I understand that, but just from the point of view – I'd like to know why, from the point of view of the court being asked to resolve the question as opposed to the tactics of the lawyer, are there procedural reasons why we could not issue an – ask for an evidentiary hearing because it's been waived or not – or not exhausted or something like that? Or is there any reason in the sort of structure of the case law why it wouldn't be appropriate to do that? Well, Your Honor, because, firstly, they have not established a conflict. They have not established a conflict which applied a trial or any critical court case. I don't think that the order itself created a conflict for the lawyer to whom it applied. Not that – not that constitutionally affected their rights, Your Honor, because they were dual counsel, one of which had ample opportunity, in fact, I believe, to investigate. Because of the two lawyers. But if there had been one lawyer – I mean, your brief doesn't acknowledge this, but clearly if there had been one lawyer. That's true. And if that gag order had not been rescinded – and it's interesting, Your Honor, in that regard – You mean that it would be okay to tell some – one lawyer that he can't talk to his client before trial about a critical witness? It's just a temporary – it was a temporary order to preserve this witness's right. A temporary order from months and months, wasn't it? Counsel. Go ahead. Well, Your Honor, first of all – oh, I'm sorry. I think there was conflict, and the only question is the consequences of that conflict. So the conflict is right there. But whether or not it's had an adverse effect is another issue. I want you to address the issue of the jury having this county employee on the jury. Well, I think the comment by the county employee was just that it's tough to be a county employee because the budget's tight. And I don't think that that is outside information. There's an affidavit that – from one of the jurors that he was asked to talk with them about the integrity and the honesty of county employees and what the whole process was in the county. But he didn't, Your Honor. My understanding is that he did not, that the only thing he talked about was how tough it was to work with a budget. If I may, before I run out of time, I'd just like to point out counsel relies on rescinding a gag order doesn't save the issue of the conflict. But Vasco suggested that rescinding the gag order would have. What Vasco determined, or Jones v. Vasco, is that the evidence did not show the judge rescinded the gag order. Not that rescinding a gag order doesn't cure this conflict. And, Your Honor, to return to the question of dual counsel rescinding, I don't think that the Court would have engaged in this procedure had there not been two attorneys. I don't think that this would have happened. I don't think that the Court probably would have lifted the order earlier. And certainly, given that the order was lifted before trial and the only alleged prejudice is some nonexistent impeachment that's 10 years old, that there's no – there is absolutely no need to look into this other issue. I have another question. What about – there was no COA issued on the sufficiency of the evidence question as to two perjury charges. But the second one, count 10, troubles me. I don't understand how there could be sufficiency of the evidence on the question of whether she directed somebody to do something when the State court specifically said she didn't direct – that did not, in fact, direct anybody to do that. It was just what they understood. Your Honor, I have to apologize. I did not prepare. Well, obviously, you'll get a chance to brief me if we do anything with it. But if I'm headed in the wrong direction, I thought it would be helpful to know it now. I'm sorry. In the future, you should be prepared on that. Because when we have something in the briefs like that, the question isn't the merits, but the question is whether a COA should issue one. That's fairly raised. In the future, I will, Your Honor. Okay. Unless the Court has any other questions, I'd just like to sum up by pointing out that this is a situation that the trial court and the court of appeal and all of the parties and the declarations, as far as we can tell, knew very well what was going on with the recusal issue. And it was not litigated and not raised, and there was a tactical reason. They didn't want this attorney to testify in this case. And unless the Court has any other questions, I'm willing to submit it. Thank you. Thank you very much, counsel. Quickly, Your Honors. One, the recusal issue was clearly raised in State court in the new trial motion and on appeal. The court of appeal ---- Which recusal? The issue that this was an unfair trial because the prosecutor was ethically disqualified was raised in the new trial motion and on appeal. The State court said we won't deal with it because the trial counts and the issue of this incredible fact of the prosecutor arguing about conversations that he was part of to the jury in closing argument. The response to the State court to all of that was we ---- I'm sorry, Your Honor. Stop here. Your Honor, and let me direct myself to that. The response of the State court was we can't deal with that because your trial attorney didn't object to it. So the reason all of these things are folded in here is we are asserting that the reason there wasn't an objection was and the prosecutor didn't. You didn't bring a Strickland motion and a charge or claim, and you have ---- we don't have any record about why this didn't happen. So instead you're relying on what might have been, what might have happened. But, Your Honor, the government just conceded. They stood here, and in response to Judge Trager's question, how could this prosecutor ---- We have no record. You can read it also as a whipsawing, you know, by the defense counsel. It's another way the record could be read. He was playing a very clever game. You know, he would try to be in the case, and then, of course, if the judge knocked him out, then she'd have a, you know, deprivation of a Sixth Amendment right to counsel. I mean, we don't have the record, but I've got to tell you, the whole thing doesn't seem right to me, but it's not before us. It isn't right, Your Honor, and the response to your question was there was an agreement. That is just the point. The government just said there was an agreement. I don't know how you can fold it. I don't see how that impacts on the issue that is raised before us. I guess that's my problem. The issue that is raised is that counsel said they were going to challenge this district attorney's office. They didn't. The State has now said it was because an agreement was made that this would go on. It was raised. Quite frankly, none of the parties at trial here, including the trial judge, who issued an order, and the government just said he issued the order to preserve the witness's rights, a gag order to preserve the witness's rights. If that isn't a conflict, if the State can't concede that if you issue an order under the statute of limitations... But, Your Honor, I'm trying to fold two issues that to me just pass in the night. I don't see any connection, really. I mean, it's a nice effort, but. Well, let me just sum up and then make one other point, Your Honor. It is simply this. The Court has looked at this and said, my God, I've never seen anything like it. I've never seen anything like it. Why did it happen? And I submit that this record suggests that the reason it happened was because the prosecutor said, I'm going to kick you off the case. The defense lawyer said, I'm going to kick you off the case. And then they reached an agreement that it was too much trouble, and the person who suffered in this was the client who wound up being tried. It was herself a lawyer and who sat and watched all this and had chosen these two lawyers and knew about the gag order and knew about the prior representation and could have easily fired them and found different lawyers and didn't do it. Your Honor, I submit to you, and you can judge this yourself, I could ask 99 percent of the lawyers what the ethical rules on conflict of interest in a criminal case are, and they couldn't answer the question. Anyway, thank you very much for an interesting argument. Thank you. An interesting case. The case of Bishop v. Contra Costa Superior Court is submitted, and we'll go to the last case of the day, United States v. Duong.
judges: B. Fletcher, Berzon, Trager